COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PEDIATRIX MEDICAL SERVICES INC., PEDIATRIX MEDICAL GROUP, INC., ENRIQUE PONTE, M.D., SADHANA CHHEDA, M.D., FURQAN MOIN, M.D., AND ROMAN ALVAREZ, M.D., | § § § § § § § | No. 08-10-00252-CV<br><br>Appeal from the<br><br>205th Judicial District Court<br><br>of El Paso County, Texas<br><br>(TC#2008-838) |
| Appellants, | | |
| v. | | |
| ELIZABETH AND JESUS DE LA O, INDIVIDUALLY AND AS NEXT FRIENDS OF VIVIANA DE LA O, | | |
| Appellees. | | |

## **O P I N I O N**

Appellants, Pediatrix Medical Services Inc., Pediatrix Medical Group, Inc., Enrique Ponte, M.D., Sadhana Chheda, M.D., Furqan Moin, M.D., and Roman Alvarez, M.D., appeal the trial court's order overruling their objections to two expert reports and denying their motion to dismiss Elizabeth and Jesus De La O's health care liability case. In three issues, Appellants contend that the expert reports fail to meet the statutory requirements of Section 74.351 of the Texas Civil Practice and Remedies Code. For the following reasons, we affirm.

## BACKGROUND

On May 10, 2006, Viviana De La O was born prematurely at twenty-four weeks gestational age, at Del Sol Medical Center to Elizabeth and Jesus De La O. As a result of her prematurity, Viviana was at a high-risk of developing Retinopathy of Prematurity (ROP). While in the Neonatal Intensive Care Unit (NICU), she was referred to Dr. Llamas-Soforo, an ophthalmologist, for ROP screening.

On June 19, 2006, at Viviana's initial ROP screening, Dr. Llamas-Soforo found no ROP and a follow-up was ordered in four weeks. On July 17, 2006, at the first follow-up exam, Dr. Llamas-Soforo found early-stage ROP in both of Viviana's eyes and a second follow-up was scheduled to be conducted in two weeks. Approximately fifteen days later, on August 1, 2006, Dr. Llamas-Soforo found a more advanced stage of ROP in both eyes and a third follow up exam was set up on August 7, 2006. On August 7, 2006, Dr. Llamas-Soforo found Viviana's ROP had reached threshold and laser treatment was arranged for August 10, 2006. After surgery, by October 2007, Viviana was found to be blind in her right eye and suffering from severe vision restrictions in her left eye.

At the time of her birth and throughout her hospitalization, Viviana was treated by Appellant-Neonatologists, Drs. Ponte, Moin, Alvarez and Appellant-Pediatrician, Dr. Chheda. Drs. Ponte, Moin, Alvarez, and Chheda were each identified on and individually signed one or more progress notes documenting Viviana's neonatal and ophthalmological care. In 2006, as part of Viviana's neonatal care, a nurse practitioner used RetCam imaging to photograph Viviana's eyes on August 2, August 9, August 21, and August 31. According to Dr. Llamas-Soforo's deposition testimony, he never received the August 2 RetCam images, but when they were shown

2

to him at his deposition, he testified that the photos indicated prethreshold ROP requiring prompt treatment.

Appellees initially sued Dr. Llamas-Soforo and other health care defendants, not including Appellants, for damages allegedly arising from negligence relating to Viviana's ROP screening and treatment. On December 30, 2009, Appellees mailed to the El Paso County District Clerk their second amended petition naming Appellants as defendants. The District Clerk received and filed the mailing on January 4, 2010. In accordance with Chapter 74 of the Texas Civil Practice and Remedies Code, Appellees filed two expert reports: one by Dr. William V. Good, a pediatric ophthalmologist, and another by Dr. Maureen Sims, a neonatologist.

Appellants filed written objections to the sufficiency of the expert reports and moved to dismiss Appellees' claims because Appellees' failed to comply with the requirements of Chapter 74. Appellees responded that both expert reports constituted a good faith effort to comply with the terms of Chapter 74. After a hearing, the trial court overruled Appellants' objections to the expert report, denied their request for dismissal, and found that the expert reports constituted a good faith effort and met the requirements of Chapter 74. This interlocutory appeal followed.

## DISCUSSION

Appellants raise three issues on appeal. Appellants first contend that Appellees failed to serve Dr. Good's report within 120 days after the second amended petition was filed. Appellants next assert that Dr. Sims is unqualified to render a causation opinion. In their third issue, Appellants complain that both expert reports fail to adequately address causation. Additionally, Appellees ask that we award them sanctions because Appellants' appeal is frivolous.

**Standard of Review**

We review a trial court's Section 74.351 ruling for an abuse of discretion. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001). A trial court abuses it discretion if it acts in an unreasonable or arbitrary manner, without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). A trial court acts arbitrarily and unreasonably if it could have reached only one decision, but instead reached a different one. *See Teixeira v. Hall*, 107 S.W.3d 805, 807 (Tex. App. – Texarkana 2003, no pet.). To that end, a trial court abuses its discretion when it fails to analyze or apply the law correctly. *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007), *citing In re Kuntz*, 124 S.W.3d 179, 181 (Tex. 2003).

**Whether Dr. Good's Expert Report Was Timely Served Within 120 Days of the Date of Filing of the Second Amended Petition**

In Issue One, Appellants contend that Dr. Good's report was not timely served within 120 days of the date the second amended petition was filed. According to Appellants, under the portion of Rule 5 of the Texas Rules of Civil Procedure known as the mailbox rule, Appellees' second amended petition was filed when it was mailed to the clerk on December 30, 2009. Appellees' counter that their second amended petition was not filed until it was actually received by the clerk on January 4, 2010. Here, the question is whether the second amended petition was filed when it was deposited in the mail or when it was actually received and filed by the court clerk.

**Applicable Law**

Section 74.351(a) of the Civil Practice and Remedies Code requires a claimant pursuing a health care liability claim to serve any expert reports on each party no later than 120 days after the original petition is filed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2011).

4

Absent a written agreement of the parties to extend the date for serving any expert reports, if the claimant fails to serve the required expert reports on a particular defendant within the 120-day time period, that defendant may obtain both a dismissal of the claim with prejudice and attorney's fees. *See id*. § 74.351(a)-(b). The "original petition" that triggers the 120-day period to serve expert reports with respect to a particular defendant is the first petition that asserts a health care liability claim against that defendant. *Carroll v. Humsi*, 342 S.W.3d 693, 697 (Tex. App. – Austin 2011, no pet.), *citing Hayes v. Carroll*, 314 S.W.3d 494, 502 (Tex. App. – Austin 2010, no pet.).

Traditionally, a pleading is considered filed upon actual receipt of the pleading by the court clerk. *Warner v. Glass*, 135 S.W.3d 681, 684 (Tex. 2004). Under the "Enlargement of Time" or mailbox rule of the Texas Rules of Civil Procedure, "[i]f any document is sent to the proper clerk by first-class United States mail . . . and is deposited in the mail on or before the last day for filing same, the same, if received by the clerk not more than ten days tardily, shall be filed by the clerk and be deemed filed in time." TEX. R. CIV. P. 5. The rule applies "[w]hen . . . an act is required or allowed to be done at or within a specified time . . . ." *Id*.

Accordingly, Rule 5 does not enlarge the time in which to file a pleading, but instead defines when it is "deemed filed in time." *Milam v. Miller*, 891 S.W.2d 1, 2 (Tex. App. – Amarillo 1994, writ ref'd), *citing Danesh v. Houston Health Clubs Inc.*, 859 S.W.2d. 535 (Tex. App. – Houston [1st Dist.] 1993, writ ref'd). Therefore, the U.S. Post Office acts as a branch of the court clerk's office for purposes of filing pleadings only when the provisions of Rule 5 are satisfied. *Id*. The rule applies to filings that contemplate a filing deadline. *See Alvarez v. Thomas*, 172 S.W.3d 298, 301 (Tex. App. – Texarkana 2005, no pet.) (Rule 5 does not apply if there is no preset deadline for filing a document; *see also In re Hearn*, 137 S.W.3d 681, 687 (Tex.

5

App. – San Antonio 2004, no pet.) (where there is no deadline for filing Rule 5 does not deem the motion filed on the date it is deposited in the mail). Indeed, if the language of Rule 5 is construed under its plain meaning, it requires a pleading to be considered filed when it is deposited in the mail only if the pleading has to be filed on or before the last day for filing. *Bailey v. Hutchins*, 140 S.W.3d 448, 451 (Tex. App. – Amarillo 2004, pet. denied).

## Application

In the instant case, it is undisputed that Appellees' second amended petition was mailed on December 30, 2009 and it was received and filed by the court clerk on January 4, 2010. Because there was no preset deadline to file the second amended petition, the provisions of Rule 5 do not apply. *See In re Hearn*, 137 S.W.3d at 685. Therefore, we find that Appellees' second amended petition was filed on January 4, 2010, the date the court clerk actually received and filed it, and as such Appellees had until May 4, 2010, to serve Dr. Good's report on Appellants. Accordingly, we find that the trial court did not err in overruling Appellants' objections or denying their motion to dismiss because Appellants were timely served with Dr. Good's report on May 3, 2010. Issue One is overruled.

## Whether Dr. Sims is Qualified to Opine as to Causation

In Issue Two, Appellants contend that Dr. Sims is unqualified to render opinions on causation. Appellees respond that Dr. Sims is qualified to opine regarding both causation and the applicable standard of care and alleged breaches because her report demonstrates she has experience in dealing with ROP and its attendant consequences. Appellants counter that Dr. Sims' training and experience as a neonatologist does not provide her sufficient expertise to opine that Viviana's alleged blindness was caused by the untimely diagnosis and treatment for ROP.

6

Appellants also contend that Dr. Sims' report and curriculum vitae fail to show that she had knowledge, from either experience or study, concerning the effectiveness of ROP treatments in general or in Viviana's particular case.

**Applicable Law**

An expert report or its accompanying curriculum vitae must show that the expert is qualified to opine on the subject matter at issue. *In re McAllen Med. Center*, 275 S.W.3d 458, 463 (Tex. 2008). The medical expert need not practice in the same specialty as the defendant in order to qualify as an expert. *Roberts v. Williamson*, 111 S.W.3d 113, 122 (Tex. 2003). However, not every licensed physician is always qualified to testify on every medical question. *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996). Thus, the focus of the trial court should not be on the specialty of the medical expert. *Roberts*, 111 S.W.3d at 122. Instead, the focus should be on the medical expert's "knowledge, skill, experience, training, or education" concerning the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Broders*, 924 S.W.2d at 153-54 (applying Texas Rule of Evidence 702); *Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App. – Houston [14th Dist.] 1999, no pet.). Thus, a medical expert from one specialty may be qualified to testify if he has practical knowledge of what is traditionally done by medical experts of a different specialty under circumstances similar to those at issue in the case. *Keo v. Vu*, 76 S.W.3d 725, 732 (Tex. App. – Houston [1st Dist.] 2002, pet. denied). Certainly, if the subject matter is common to and equally recognized and developed in all fields of practice, any practitioner familiar with the subject may testify as to the standard of care. *Id.*; *Blan*, 7 S.W.3d at 745. However, the proffered medical expert's qualifications must be evident from the four corners of his expert report and curriculum vitae. *See generally Palacios*, 46 S.W.3d at 878;

7

*Christus Health Southeast Texas v. Broussard*, 267 S.W.3d 531, 536 (Tex. App. – Beaumont 2008, no pet.). Furthermore, the trial court must ascertain that the expert does indeed possess the expertise on the subject for which he is giving an expert opinion. *Palafox v. Silvey*, 247 S.W.3d 310, 316 (Tex. App. – El Paso 2007, no pet.).

## Application

Dr. Sims' expert report demonstrates that she is a board-certified neonatologist and pediatrician. Her report also shows that she has knowledge and is familiar with the policies and procedures for ensuring screening for ROP and that she has been involved in the development of policies and procedures for the care of premature infants for the past twenty years. Recited with her report Dr. Sims states:

> I have personally treated small preterm newborns like Viviana de la O, and I am familiar with the standards of care for treating such small infants, both at the physician level and the hospital/nursing/staffing level with respect to policies and procedures, for ensuring screening for retinopathy of prematurity (ROP). I have requested ophthalmologic consultations from pediatric ophthalmologists to screen preterm infants for ROP, and I have helped to develop the necessary policies and procedures to ensure a baby at risk for ROP obtains the necessary care and treatment he or she needs.

Apart from her statement that she has requested ophthalmologic consultations from pediatric ophthalmologists, nothing in Dr. Sims' report indicates that she has knowledge, skill, experience, training or education concerning pediatric ophthalmology, ROP pathology, or the effectiveness of ROP treatments in general and in Viviana's case. Here, the four corners of Dr. Sims' report fails to show how she is qualified to render expert opinions on causation as to Viviana.[1] Thus, we cannot conclude that Dr. Sims was qualified to render causation opinions as to Viviana's blindness. *Cf. Roberts*, 111 S.W.3d at 122 (medical expert qualified because his

---

[1] Although Dr. Sims refers to her curriculum vitae in her report the record contains no such curriculum vitae.

report showed that he "studied the effects of pediatric neurological injuries," had "extensive experience advising parents about the effects of those injuries," and relied on the interpretation of MRIs and CT scans by a pediatric neurologist); *Livingston v. Montgomery*, 279 S.W.3d 868, 877 (Tex. App. – Dallas 2009, no pet.) (medical expert's report reflected that he had "knowledge and expertise to recognize the perinatal progression of hypoxia due to inadequate oxygenation through a compromised uteroplacental unit"). Accordingly, having found that Dr. Sims was not qualified to render expert opinions regarding the causal relationship between Appellants' alleged breaches of the standard of care and Viviana's injuries, we hold that the trial court abused its discretion by overruling Appellants' objections as to Dr. Sims' qualifications. Issue Two is sustained.

### Whether the Expert Reports of Dr. Good and Dr. Sims Adequately Address Causation

In Issue Three, Appellants contend that Dr. Good's and Dr. Sims' expert reports fail to adequately address causation because they lack a sufficiently specific description of the causal connection between each individual Appellant's alleged acts in breach of the standard of care and the alleged harm to Appellees. Thus, Appellants conclude that the reports do not constitute a good faith effort to comply with Section 74.351. Appellees respond that the reports constituted a good faith effort and that, read together, the two expert reports meet the statutory requirements. Having found that Dr. Sims lacked knowledge, skills, experience, training, or education to offer causation opinions concerning Viviana's injuries, we do not address Issue Three as to the expert report of Dr. Sims.

### Applicable Law

An "expert report" is a written report that provides a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the defendant failed to meet those

9

standards, and the causal relationship between the defendant's failure and the plaintiff's injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2011). A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App. – San Antonio 2004, no pet.). Accordingly, causation cannot be inferred; it must be clearly stated. *Castillo v. August*, 248 S.W.3d 874, 883 (Tex. App. – El Paso 2008, no pet.). Indeed, we may not fill in gaps in a report by drawing inferences or guessing what the expert meant or intended. *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App. – Austin 2007, no pet.).

In setting out the expert's opinions on each of the required elements, the report must provide enough information to fulfill two purposes if it is to constitute a good faith effort. *Palacios*, 46 S.W.3d at 879. An objective good faith effort to comply with the statute is made if the report: (1) informs the defendant of the specific conduct that the plaintiff has called into question and (2) allows the trial court to conclude that the claim has merit. *Id*. at 879. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not provide the necessary information to fulfill the dual purposes. *Id*. Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mem.'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

However, a plaintiff need not present evidence in the report as if it were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. The report can be informal, meaning that it does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial. *Id*. In addition, a plaintiff may satisfy any requirement for serving an expert report by

serving separate reports from different experts. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i) (West 2011).

**Application**

**Dr. Good's Medical Expert Report**

Appellants do not challenge Dr. Good's qualifications or the adequacy of his discussion of the applicable standard of care or the breach of the standard of care. Appellants contend only that the trial court erred in overruling their objections to the adequacy of Dr. Good's report because he failed to adequately address the causal relationship between Appellants' alleged failure to (1) ensure proper follow-up exams by Dr. Llamas-Soforo and Viviana's alleged injury; (2) ensure that Dr. Llamas-Soforo timely received the August 2, 2006, RetCam images and Viviana's injury; and (3) establish policies and procedures for ROP examinations and RetCam Imaging and Viviana's injury.

Dr. Good's report explains his qualifications and experience as a pediatric ophthalmologist, and then sets out the factual recitations surrounding Viviana's birth and the medical care she received while in the NICU. Dr. Good's report identifies the standard of care for infants at risk for ROP along with each individual Appellant's duty to ensure that Viviana received the appropriate level of care as she was at risk for ROP. Dr. Good's report also identifies the conduct that has been called into question, the applicable standard of care, the manner in which Appellants failed to meet the standards, and the causal relationship between that failure and the harm Viviana suffered as a result. In particular, Dr. Good's report opines as follows:

> Drs. Ponte, Chheda, Moin, and Alvarez had a duty to ensure a second follow up exam occurred before 8/1/06. Because the 7/17 exam was untimely, the 8/1 exam was also untimely, as it was "2 wks" from an untimely exam. Standard of care requires that the 8/1 follow up exam be conducted at least 1 week earlier. The

11

reason for this is that Vivian was high risk for significant ROP, and the rate of progression of ROP is important in monitoring the disease, and learning whether laser intervention should ensue.

.   .   .

If Drs. Ponte, Chheda, Moin, and Alvarez provided standard of care, a follow up exam would have taken place prior to 8/1/06, wherein the likelihood would have been that Viviana had the type of prethreshold ROP that should have been treated earlier, with properly-administered ablative therapy. By providing earlier ablative therapy, Vivana's bilateral blindness, within a reasonable degree of medical probability, would have been avoided. Instead, Viviana's prethreshold ROP was allowed to worsen between 8/2 and the 8/10 surgery, impairing the success of the surgery. Drs. Ponte, Chheda, Moin, and Alvarez's failure to provide this standard of care is a proximate cause of Viviana's blindness.

Looking to the four corners of the report, Dr. Good identified what conduct Appellants should have engaged in and what happened when they failed to engage in that conduct. Dr. Good's report adequately links the facts to the alleged acts causing Viviana's injuries. *See Wright*, 79 S.W.3d at 52. Thus, we find that Dr. Good's report was sufficient to establish causation and the report constitutes a good faith effort to provide a fair summary of his causation opinions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6) (the expert report must identify the manner in which the defendant's conduct failed to meet the standards of care and the causal relationship between that failure and the injuries claimed); *Doades v. Syed*, 94 S.W.3d 664, 671-72 (Tex. App. – San Antonio 2002, no pet.); *Rittmer v. Garza*, 65 S.W.3d 718, 722-23 (Tex. App. – Houston [14th Dist.] 2001, no pet.); *Taylor v. Christus Spohn Health Sys. Corp.*, 169 S.W.3d 241, 244 (Tex. App. – Corpus Christi 2004, no pet.).

Dr. Good's report informs Appellants of the conduct in question and provides a basis for the trial court to determine the merit of Appellees' claims. Accordingly, the trial court did not

abuse its discretion in overruling Appellants' objections to Dr. Good's report. Appellants' third issue is overruled.

## SANCTIONS

Appellees argue that we should award damages to them because it is "evident" that Appellants "have failed to identify any legitimate basis for concluding that the expert reports are insufficient under section 74.351." While we are authorized to award just damages if we determine that an appeal is frivolous, we exercise that authority only if the record shows that the appellant did not act in good faith and had no reasonable expectation of reversal. TEX. R. APP. P. 45; *Faddoul v. Oaxaca*, 52 S.W.3d 209, 213 (Tex. App. – El Paso 2001, no pet.). In this case, Appellants have submitted a thorough brief and have shown that they have acted in good faith. Therefore, we cannot conclude that Appellants had no reasonable grounds to believe the lower court's decision would be reversed.

## CONCLUSION

Although we have determined that the trial court erred by overruling the objections to the expert report of Maureen Sims, M.D., the trial court properly overruled the objections to the expert report of William Good, M.D. We therefore affirm the trial court's order denying the motion to dismiss.



GUADALUPE RIVERA, Justice

March 14, 2012

Before Rivera, J., Antcliff, J., and Chew, C.J., (Senior)
Chew, C.J., (Senior), sitting by assignment, concurring

13

## CONCURRING OPINION

I respectfully concur. I do not believe that Dr. Sims' expert report is inadequate. *See Pediatrix Medical Group v. Robinson*, 352 S.W.3d 879 (Tex. App. – Dallas 2011, no pet.).


March 14, 2012                    DAVID WELLINGTON CHEW, Chief Justice (Senior)