

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-12-00030-CV
_____

SENAIDA "CINDY" ALONZO AND VICTOR ALONZO, APPELLANTS

V.

DOUGLAS LAMPKIN, M.D. AND COVENANT HEALTH SYSTEM
D/B/A COVENANT LAKESIDE, APPELLEES

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2009-548,605, Honorable Ruben Reyes, Presiding

November 13, 2013

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellants, Senaida "Cindy" Alonzo and Victor Alonzo, appeal from an order striking their medical experts and granting summary judgment in favor of Appellees, Douglas Lampkin, M.D., and Covenant Health System d/b/a Covenant Lakeside (Covenant) with respect to the Alonzos' health care liability claims. Summary judgment was granted because, without the testimony of the Alonzos' medical experts, there was

no evidence to satisfy the causation element of their claim. In three issues, the Alonzos assert the trial court erred by (1) excluding Dr. Harold Miller's and (2) Dr. Todd Swick's expert testimony on the issue of causation; and (3) granting Covenant's "no evidence" motion for summary judgment. We affirm.

## BACKGROUND

This is a medical malpractice action. On August 7, 2007, Dr. Lampkin performed a hysterectomy on Cindy Alonzo, pricking her bowel in the process. The following day, her white blood cell count was 13.6 when the normal range was 4.8 to 10.8. Early in the morning on August 9, her oxygen saturation level dropped to 87% and was brought back up to 93% using a nasal cannula. Later that morning, her oxygen saturation was 96%. The night of August 9, her oxygen saturation dropped to 86% and was brought back up to 96% with treatment. On the morning of August 10, she was walking in the hallway. Her oxygen saturation level was 95% on room air, her temperature was good, respiration was good, and her pulse rate was 120. She was subsequently discharged after being on room air at least three hours and her oxygen saturation level was 95%. The next day, her family brought her back to the hospital where her bowel was repaired and she underwent treatment to fend off an infection. When re-admitted, Cindy's oxygen saturation was 74% and she was obtunded.

More than a year later in October 2008, Dr. Duke Meyer diagnosed Cindy with a new onset of cognitive decline possibly due to normal-pressure hydrocephalus, metastic disease, vasculitus, an unwitnessed fall with subdural hematoma, dementing illness such as Pick's disease, premature Alzheimer's, or psychiatric illness. Meyer referred

2

her to a neurologist, Dr. Ahmad Sabouni.  In November, she was seen by Sabouni who described Alonzo as a person with a "history of hypoxic encephalopathy with mild cognitive impairment secondary to depressed mood, with chronic migraine."

In October 2010, the Alonzos filed their *First Amended Petition* asserting Cindy was prematurely discharged from the hospital in 2007 because neither Lampkin nor Covenant appreciated the seriousness of her medical condition.  Due to the premature discharge, they alleged she suffered a hypoxic event (lack of oxygen) causing brain damage and, as a result, suffers from a variety of symptoms including personality changes, disabling headaches, memory loss, and difficulty concentrating.  In two scheduling orders, the parties agreed the expert designation deadline would be May 7, 2010, for the Alonzos and June 25, 2010, for Covenant.[1]  The Alonzos designated two experts:  Dr. Harold Miller, an obstetrician and gynecologist, and Dr. Richard Fulbright, a neuropsychologist.  In August 2011, the Alonzos designated a third expert, Dr. Todd Swick.

After deposing Miller and Fulbright, Covenant moved to strike their expert designations for lack of qualifications, reliability, and relevance.  Covenant also moved for summary judgment based on lack of causation and subsequently moved to strike Swick's out-of-time designation.  After a hearing, the trial court granted Covenant's objections regarding Miller, Fulbright, and Swick.  The trial court also granted Covenant's no evidence motion for summary judgment based on a lack of evidence as to causation.  This appeal followed.

---

[1]In an e-mail exchange, the parties' attorneys subsequently agreed to a one week extension until May 14 for the designation of the Alonzos' experts.

DISCUSSION

By their first two issues, the Alonzos assert (1) Miller was sufficiently qualified to render an opinion on causation; (2) Swick's late designation did not prejudice Covenant and, by striking both Miller and Swick, the trial court improperly issued a "death penalty" sanction because its ruling eliminated the Alonzos' only causation evidence. Logic dictates that we address the Alonzos' second issue first.

### DR. TODD SWICK

The Alonzos assert the trial court erred by excluding Swick's expert testimony because the exclusion amounted to a "death penalty" sanction under Rule 215 of the Texas Rules of Civil Procedure. In support, the Alonzos contend the exclusion fails to meet the requirements established by the Texas Supreme Court in *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917-18 (Tex. 1991).

We review a trial court's decision to exclude testimony under an abuse of discretion standard. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). *See Perez v. Embree Constr. Group, Inc.,* 228 S.W.3d 875, 883 (Tex. App.—Austin 2007, pet. denied) (exclusion of expert witness due to untimely designation reviewed under an abuse of discretion standard). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the trial court acted without reference to any guiding rules and principles." *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004) (quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1986). In other words, we must decide whether the trial court's decision was arbitrary or unreasonable

4

and we must uphold an evidentiary ruling if there is any legitimate basis for it. *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

Here, the parties entered into agreed scheduling orders in January and November 2010 requiring the Alonzos designate their expert witnesses in May 2010. The orders were signed by the attorneys for all parties and by the judge, and filed with the trial court's papers as part of the record. The agreed orders satisfied all the requirements necessary to establish a Rule 11 agreement. TEX. R. CIV. P. 11.[2] *See Trevino v. Houston Orthopedic Center,* 831 S.W.2d 341, 344 (Tex. App.—Houston [14th Dist.] 1992, writ denied). As the parties' agreement was valid under Rule 11, the trial court had a duty to enforce its terms. *Fortis Benefits v. Cantu,* 234 S.W.3d 642, 651 (Tex. 2007). *See also EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 91 (Tex. 1996) (orig. proceeding) (noting that trial courts should not consider evidence outside the bounds of a valid Rule 11 agreement); *Scott-Richter v. Taffarello*, 186 S.W.3d 182, 189 (Tex. App.—Fort Worth 2006, pet. denied) (holding that a trial court has a ministerial duty to enforce a valid Rule 11 agreement).

The Alonzos do not dispute that Swick was designated as an expert witness months after the May 2010 deadline had passed. Thus, on filing of Covenant's motion to strike Swick's untimely expert designation, the trial court had "a ministerial duty to render judgment in strict accordance with the parties' agreement." *Trevino,* 831 S.W.2d at 344. The trial court did not err because its ruling complied with the parties' agreement.

---

[2]"Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11.

The Alonzos assert their agreement was not intended to exclude a later designation of experts who were intended to rebut the opinions of another party's experts. We disagree. A Rule 11 agreement is considered contractual in nature; *Coale v. Scott,* 331 S.W.3d 829, 832 (Tex. App.—Amarillo 2011, no pet.), and, as such, is interpreted in the same manner as are contracts in general. *Golden Spread Elec. Coop., Inc. v. Denver City Energy Assoc., L.P.*, 269 S.W.3d 183, 190-91 (Tex. App.—Amarillo 2008, pet. denied). We look to the plain meaning of the words of a Rule 11 agreement to determine the extent of the parties' agreement. *Id.* Here, the parties' agreement requires that the Alonzos "shall list each expert's name, . . ." by May 7, 2010. The term "expert" is neither defined nor qualified. Hence, the Alonzos were required to designate *all* their experts, rebuttal or otherwise, by the due date.

The Alonzos also assert the trial court improperly issued a "death penalty" sanction by striking Swick's expert designation citing *TransAmerica Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991). *See* TEX. R. CIV. P. 215. This assertion ignores the fact that the Alonzos entered into and were bound by the specific language of their Rule 11 agreement.[3] In the absence of any modification of their agreement with Covenant, the trial court was duty bound to grant Covenant's motion. *See Fortis Benefits,* 234 S.W.3d at 651. Accordingly, we find the trial court did not abuse its discretion in granting Covenant's motion to strike Swick's expert designation. The Alonzos' second issue is overruled.

---

[3]We note that, in any event, Rule 215 is inapplicable in this instance. Under Rule 193.6 the testimony of a witness not timely identified is inadmissible as evidence. TEX. R. CIV. P. 193.6(a); *Didur-Jones v. Family Dollar, Inc.,* No. 02-09-00069-CV, 2009 Tex. App. LEXIS 8999, at *5, *8-9 (Tex. App.—Fort Worth 2009, pet. denied) (mem. op.).

**DR. HAROLD J. MILLER**

## 1. EXPERT WITNESSES

A witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion. TEX. R. EVID. 702. If a licensed doctor has sufficient familiarity with the specific subject matter at issue in a medical malpractice suit, he is qualified to testify as an expert. *Broders v. Heise*, 924 S.W.2d 148, 152-53 (Tex. 1996). *See Cooper Tire & Rubber Co. v. Mendez,* 204 S.W.3d 797, 800 (Tex. 2006) (the expert must truly have expertise concerning the "actual subject about which they are offering an opinion"). Further, a medical expert from one specialty may be qualified to testify if he has practical knowledge of what is customarily done by practitioners of a different specialty under circumstances similar to those at issue in the suit. *Tenet Hospitals, Ltd. v. De La Riva,* 351 S.W.3d 398, 406 (Tex. App.—El Paso 2011, no pet.). Accordingly, a trial court must measure the doctor's expertise against the opinion being offered to determine whether he or she is qualified. *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 237 (Tex. App.—Texarkana 2005, no pet.); *Marvelli v. Alston*, 100 S.W.3d 460, 474 (Tex. App.—Fort Worth 2003, pet. denied).

When an expert testifies regarding causation, he or she must provide information linking the defendant's purported breach of the standard of care to the injury, harm, or damages. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex. 2002). A causal connection is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission the harm would

not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.,* 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). *See Wright,* 79 S.W.3d at 53. A causation opinion may not be conclusory; *Estorque v. Schafer,* 302 S.W.3d 19, 27 (Tex. App.—Fort Worth 2009, no pet.), or merely provide some insight into plaintiff's claims. *Wright,* 79 S.W.3d at 53. Neither is the trial court required to admit opinion evidence which is connected to existing data by the *ipse dixit* of the expert. *Cooper Tire*, 204 S.W.3d at 801. If the expert brings merely his credentials and subjective opinion, his testimony is unsupported and cannot be of assistance to the jury. *Id.* Indeed, we may not fill in gaps in an expert's report or testimony by drawing inferences or guessing what the expert likely meant or intended. *Austin Heart, P.A. v. Webb,* 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.). "[C]ausation cannot be inferred; it must be clearly stated." *Tenet Hospitals, Ltd. v. Love,* 347 S.W.3d 743, 755 (Tex. App.—El Paso 2011, no pet). *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 876 (Tex. 2001) (expert testimony may not establish causation through mere conjecture, speculation, or possibility).

The plaintiff has the burden to establish that their expert witness is qualified to offer an opinion on causation; *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718 (Tex. 1998), and such opinion must establish causal nexuses between (1) the defendant's conduct and the event sued upon and (2) the event sued upon and the plaintiff's injuries. *See Jelinek v. Casas,* 328 S.W.3d 526, 532 (Tex. 2010). We review the trial court's decision to strike an expert's testimony for abuse of discretion. *Broders*, 924 S.W.2d at 151.

8

## 2. ANALYSIS

The critical causation issues presented by the Alonzos' claim are (1) whether a hypoxic event occurred between the time of Alonzo's surgery on August 7, 2007, and her re-admission on August 11, 2007, and (2) whether such an event caused her symptoms more than a year later.

Miller's report indicates he is a board-certified obstetrician/gynecologist that is basing his opinions on his training, experience, and education in the OB/GYN field. Although his specialty does not focus on diseases of the nervous system, he has performed hundreds of hysterectomies including post-operative care. His *curriculum vitae* indicates he completed his residency in OB/GYN in 1964 and has since engaged in a private OB/GYN practice as well as a teaching practice in various faculty positions. He has written articles and received numerous awards in the OB/GYN field of medicine. Nowhere, however, does his *curriculum vitae* indicate he has any experience, training or education in the field of neurology or, more specifically, brain injuries. On deposition, he indicated he has not evaluated Alonzo personally. He testified his opinions did not rely on any medical literature; he has not practiced as a neurologist, psychologist, or psychiatrist; he hasn't treated brain injuries; doesn't read brain EEGs, MRIs, or CT scans; couldn't recall the last time he sent a patient to a neurologist; didn't use neuropsychologists; didn't evaluate patients to determine the extent of any nerve damage due to hypoxia; couldn't predict how much brain damage Alonzo suffered; and couldn't pinpoint the occurrence of a hypoxic event sufficient to cause brain damage to Alonzo. If he had a problem with a brain injury, he indicated he would consult with a

9

neurologist for his or her opinion whether a patient had a brain injury and the extent of any damage.

Here, there is nothing in the four corners of Miller's report, his *curriculum vitae*, or his deposition indicating he is qualified to opine on causation as to Alonzo's injuries. Thus, we cannot conclude the trial court abused its discretion in finding that Miller was not qualified to render causation opinions regarding Alonzo's injuries. *See Broders,* 924 S.W.2d at 153; *Pediatrix Med. Servs. Inc. v. De La O,* 368 S.W.3d 34, 40-41 (Tex. App.—El Paso 2012, no pet.); *De La Riva,* 351 S.W.3d at 407. *Cf. Roberts v. Williamson,* 111 S.W.3d 113, 122 (Tex. 2003) (board-certified pediatrician qualified as a medical expert because his report showed that he "studied the effects of pediatric neurological injuries," had "extensive experience advising parents about the effects of those injuries," and relied on the interpretation of MRIs and CT scans by a pediatric neurologist); *Livingston v. Montgomery,* 279 S.W.3d 868, 877 (Tex. App.—Dallas 2009, no pet.) (medical expert's report reflected that he had "knowledge and expertise to recognize the perinatal progression of hypoxia due to inadequate oxygenation through a compromised uteroplacental unit").

Alternatively, the expert opinion in Miller's report is conclusory because he "simply express[es] an inference without stating the underlying facts upon which the inference was based;" *Love,* 347 S.W.3d at 755, i.e., Alonzo suffered a hypoxic event that caused brain injury. Miller simply states in his report and deposition that Alonzo first entered the hospital with no brain injury and, more than a year after her final discharge, showed signs of brain injury. He provides no analytical link between Alonzo's hospital stays at Covenant and her subsequent medical condition. *See*

*Regent Health Care Ctr. of El Paso, L.P. v. Wallace,* 271 S.W.3d 434, 441 (Tex. App.—El Paso 2008, no pet.) (mere reference to general concepts regarding patient assessment, monitoring, and interventions were insufficient as a matter of law to establish causation). *See Lo v. Gonzales.,* No. 01-12-00987-CV, 2013 Tex. App. LEXIS 4820, at *15-18 (Tex. App.—Houston [1st Dist.] April 18, 2013, no pet.) (mem. op.) (expert's reliance on the passage of time without any underlying factual support insufficient to establish delay itself actually caused any additional symptoms or suffering). "An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff,* 998 S.W.2d 882, 890 (Tex. 1999). *See Jelinek,* 328 S.W.3d at 529.

In addition, neither his report nor deposition explain how any failure to consult a specialist during Alonzo's first hospital stay caused any worsening or progression of her listed conditions. *Estorque,* 302 S.W.3d at 28 (expert's report insufficient to establish causation where expert failed to explain how or why the physicians' failure to consult a urologist or gynecologist caused any worsening or progression of patient's listed conditions). Instead, on deposition, Miller testified he could not say whether a consult with a pulmonologist or neurologist would have resulted in the discovery and treatment of any infection from the bowel perforation—the purported genesis of Alonzo's oxygenation issues. *See Costello,* 141 S.W.3d at 249 (finding expert's mere assertion that the patient would have survived was conclusory when report did not explain the causal connection between hospital's claimed failure to appropriately triage and evaluate the patient and the patient's death, offered no explanation of what medical

11

information a more timely triage and evaluation would have revealed, nor state what would have been done had the hospital not failed to act).

The Alonzos assert Miller appropriately relied on the reports of Matthew Lambert, licensed psychologist, and Richard L. Fulbright, licensed neuropsychologist, to conclude that Alonzo suffered brain damage from hypoxia after she was discharged from the hospital and re-admitted the following day.[4]  Lambert assessed Alonzo's medical condition as of January 2009.  The conclusions in his report regarding the origin of her symptoms were premised on an oral history provided by the Alonzos.  Fulbright assessed Alonzo's condition as of March 2010.  The conclusions in his report regarding the origin of her symptoms similarly relied on an oral history provided by Alonzo's husband.  Neither Lambert nor Fulbright examined Alonzo prior to their initial consultations in 2009 and 2010 respectively.  While section 74.351(i), in part, permits a claimant to utilize separate expert reports regarding different issues, such as liability and causation, arising from the conduct of a physician; TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i) (West 2011); *Iqbal v. Rash,* 346 S.W.3d 827, 832 (Tex. App.—El Paso 2011, no pet.), the experts must still meet the requirements of section 74.403(a) which requires that only a physician who is otherwise qualified may render an opinion in a suit against a physician or health care provider on causation.  TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (West 2011).  *See De La Riva,* 351 S.W.3d at 405; *Iqbal,* 346 S.W.3d at 832.

In sum, due to Miller's inadequate qualifications and, alternatively, the inadequacies of the causation opinions expressed in his expert report and deposition,

---

[4]Miller also relied on Swick's expert report.

we cannot say the trial court acted unreasonably or in an arbitrary manner without reference to guiding rules or principles when it struck Miller as an expert witness, i.e. the trial court did not abuse its discretion in excluding Dr. Miller's testimony. Accordingly, Appellant's first issue is overruled.

### SUMMARY JUDGMENT

The Alonzos assert the trial court erred in granting summary judgment in favor of Covenant because the expert affidavits and testimony of Miller and Swick created an issue of fact on causation. This contention overlooks that the trial court granted summary judgment *after* striking Miller and Swick as expert witnesses. Having found the trial court committed no error by striking their expert testimony, we also find the trial court properly granted summary judgment because the Alonzos failed to produce any evidence to establish the element of causation. *See In re K.D.C.,* 78 S.W.3d 543, 551-52 (Tex. App.—Amarillo 2002, no pet.). The Alonzos' third issue is overruled.

### CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

13