**AFFIRM; and Opinion Filed April 30, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00833-CV

### SUJEET ACHARYA, M.D., TEXAS ONCOLOGY, P.A., AND TEXAS UROLOGY SPECIALISTS, Appellants
### V.
### BERNICE MARIE GOMEZ, Appellee

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-12969**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

In this interlocutory appeal, we consider whether an expert report filed by appellee Bernice

Marie Gomez to support a healthcare liability claim against appellants Sujeet Acharya, M.D.,

Texas Oncology, P.A., and Texas Urology Specialists meets the requirements of section 74.351 of

the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE § 74.351. We conclude that it

does, and we affirm the trial court's order overruling appellants' objections to the report and

denying appellants' motion to dismiss.

### BACKGROUND

Gomez was diagnosed with a malignant tumor in her left adrenal gland that was causing

her abdominal pain. Dr. Acharya performed surgery on Gomez on November 14, 2016, to remove

the cancerous adrenal gland. But a post-surgical pathology report revealed that only benign tissue

from Gomez's pancreas had been removed, not the cancerous adrenal tissue. In the following weeks, Gomez required treatment for her injured pancreas. She continued to suffer from worsening abdominal pain and had not received further treatment for her malignant adrenal tumor as of June 1, 2017.

Gomez sued appellants,[1] alleging that Dr. Acharya was negligent in the care provided to her. She served an expert report as required under Chapter 74 of the civil practice and remedies code. TEX. CIV. PRAC. & REM. CODE §§ 74.001–74.507 ("Chapter 74"). Richard E. Link, M.D., Ph.D prepared the report on Gomez's behalf. Appellants filed a motion to dismiss Gomez's claims, arguing that the report did not meet Chapter 74's requirements. An associate judge granted the motion and gave Gomez an opportunity to amend the report as permitted under Chapter 74. Dr. Link revised his report and appellants filed a motion to dismiss that addressed the revised report. The trial court heard the motion, overruled appellants' objections to Dr. Link's revised report, and denied the motion to dismiss by order signed June 20, 2018.

In five issues, appellants contend the trial court erred by overruling their objections to Gomez's Chapter 74 expert report and denying their motion to dismiss. They allege:

1. Dr. Link is not qualified to opine regarding causation;

2. The report "ignored the facts" regarding Dr. Acharya's communications with Gomez after the surgery;

3. The report does not "accurately report the facts of the case" regarding the care Dr. Acharya exercised during surgery;

4. The report fails to specify a clear standard of care; and

5. The report fails to explain the causal connection between the alleged breaches of the standard of care and the alleged injuries.

---

[1] Gomez alleges that appellants Texas Oncology, P.A. and Texas Urology Specialists are vicariously liable for Dr. Acharya's medical care.

## STANDARD OF REVIEW

We review a trial court's ruling on the sufficiency of an expert's report for abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam); *Nexion Health at Terrell Manor v. Taylor*, 294 S.W.3d 787, 791 (Tex. App.—Dallas 2009, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). The trial court has no discretion in determining what the law is or applying the law to the facts. *Sanchez v. Martin*, 378 S.W.3d 581, 587 (Tex. App.—Dallas 2012, no pet.). A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). But a trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would under similar circumstances. *Taylor*, 294 S.W.3d at 791.

## DISCUSSION

An expert report under section 74.351 must represent a good-faith effort to provide a fair summary of the expert's opinions. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001). The report need not marshal all the plaintiff's proof, but must include the expert's opinion on each of the elements identified in the statute. *Id.* To constitute a good-faith effort, the report must (1) inform the defendant of the specific conduct the plaintiff has called into question, and (2) provide a basis for the trial court to conclude the claims have merit. *Id.* at 879. In addition, "the expert report must make a good-faith effort to explain, factually, how proximate cause is going to be proven," although the report need not use the words "proximate cause," "foreseeability," or "cause in fact." *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). "'[T]he expert must explain the basis of his statements to link his conclusions to the facts.'" *Id.* (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

"[C]ourts must view the report in its entirety, rather than isolating specific portions or sections, to determine whether it includes" the required information. *Baty v. Futrell*, 543 S.W.3d 689, 694 (Tex. 2018).

## A. Expert's qualifications

In their first issue, appellants argue that Dr. Link is not qualified to opine about causation because "he is not a gastroenterologist and claims no special knowledge of pancreatic injury or the sequelae of pancreatic injury." Appellants argue that even though Dr. Link states he is "familiar with the entity of necrotizing pancreatitis which can be a sequalae of untreated pancreatic injury," he does not have the expertise to connect necrotizing pancreatitis to the alleged cause of Gomez's injury. Appellants' challenge focuses on Dr. Link's alleged lack of expertise regarding injuries to the pancreas. But as we discuss, Dr. Link opines that the injury to Gomez's pancreas occurred as a result of Dr. Acharya's negligent surgical procedures on Gomez's adrenal gland. At issue are Dr. Link's expertise—and Dr. Acharya's alleged negligence—in the surgical procedures for removal of a cancerous adrenal gland, not the occurrence or treatment of pancreatic injury.

Gomez contends that Dr. Link's report demonstrates he has the requisite expertise to opine about causation of her injury. Section 74.403 of Chapter 74 sets out the criteria necessary for an expert to opine on causation. *Id.* § 74.403(a). To qualify as expert on the causal relationship between an alleged departure from accepted standards of care and a plaintiff's injury, the person must be a physician and "otherwise qualified to render opinions" on causation under the Texas Rules of Evidence. *Id.* Rule of evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion if the testimony would "help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. The party offering the witness as an expert must establish that the witness is qualified to testify under rule 702 by demonstrating the witness has expertise concerning the actual

subject matter about which the party is offering an opinion. *Mem'l Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 762 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arises or at the time testimony is given, the witness is "board certified or has other substantial training or experience in an area of medical practice relevant to the claim" and is "actively practicing medicine in rendering medical care services relevant to the claim." CIV. PRAC. & REM. § 74.401(c). The trial court should focus on the medical expert's "knowledge, skill, experience, training, or education" concerning the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Roberts v. Williamson*, 111 S.W.3d 113, 122 (Tex. 2003) (trial court did not abuse discretion by admitting expert's testimony on plaintiff's neurological issues; although doctor was not neurologist, he had experience and expertise regarding the specific causes and effects of plaintiff's injuries). The trial court's focus should not necessarily be on the specialty of the medical expert. *Pediatrix Med. Servs. Inc. v. De La O*, 368 S.W.3d 34, 39 (Tex. App.—El Paso 2012, no pet.).

Dr. Link is a medical doctor licensed in Texas, is board certified by the American Board of Urology, has "advanced fellowship training in Endourology and Minimally Invasive Uruologic Surgery," and has been performing and teaching minimally invasive retroperitoneal and pelvic surgery, including adrenalectomies (the surgery at issue here), since 2005. Dr. Link attached his curriculum vitae to his affidavit showing that he currently holds numerous faculty positions in the Department of Urology at Baylor College of Medicine, including Director of the Division of Endourology and Minimally Invasive Surgery, a position he has held for more than a decade.

Appellees argue Dr. Link does not have the expertise to opine about the injuries caused to Gomez's pancreas. But Dr. Link explained his experience in both teaching and performing the surgery at issue, and when doing so, preserving the patient's pancreas:

Throughout my career as a urologist with a focus on minimally invasive retroperitoneal surgery, I have routinely monitored and cared for patients with suspicious adrenal lesions found on radiographic studies. I have specific advanced training in both laparoscopic and robotic adrenalectomy procedures and have regularly evaluated and treated similar patients with adrenal masses during my career. Over the past 13 years of practice, I have performed more than 1,500 minimally invasive retroperitoneal procedures, including laparoscopic and robotic nephrectomy, partial nephrectomy, pyeloplasty, ureterolysis, ureteral reconstruction and adrenalectomy. I have served as faculty for multiple national courses through the American Urological Association to teach these techniques to other surgeons. I have extensive experience performing laparoscopic and robotic adrenalectomy for both benign and malignant tumors, having performed more than 100 adrenalectomies in the past. Over this time interval, I have also performed more than 800 laparoscopic left donor nephrectomy procedures. In each donor nephrectomy, the left adrenal gland and tail of the pancreas must both be identified and dissected free of surrounding tissue so that these important structures can be preserved. In summary, I am currently performing minimally invasive procedures multiple times a week that involve identification and preservation of the left adrenal gland and tail of the pancreas. My advanced subspecialty training and experience in this specific area over 13 years of practice provides me with the necessary perspective to comment on the technical issues that led to a misidentification of the pancreas as the adrenal gland and the subsequent pancreatic injury (and omission of adrenalectomy) during this case that resulted in significant morbidity for Ms. Bernice Gomez.

Dr. Link also explained his familiarity "with the endocrine and exocrine functions of the pancreas and the effects of injury to the pancreatic duct and leakage of pancreatic enzymes," injuries he explained that Gomez suffered as a result of Dr. Acharya's misidentification and removal of a portion of her pancreas. He continued, "[t]his is a basic requirement of medical training and is particularly emphasized in surgical residency training, fellowship and urologic surgical practice," in all of which he provided details of his experience. We conclude the trial court did not abuse its discretion by determining that Dr. Link was qualified to provide an opinion on causation. *See Baylor Univ. Med. Ctr. v. Rosa*, 240 S.W.3d 565, 572 (Tex. App.—Dallas 2007, pet. denied) (concluding expert's causation opinions provided sufficient basis for trial court to conclude that plaintiff's claims had merit). We decide appellants' first issue against them.

## B. Factual disputes

In their second and third issues, appellants argue that Dr. Link "ignored the facts actually cited in the report itself" regarding whether Dr. Link communicated with Gomez after the surgery about the injury, and "failed to accurately report the facts of the case as to whether Dr. Acharya exercised care in identifying anatomical landmarks in the surgery to avoid injury to non-target organs." They argue that Dr. Link's report "gets fundamental facts simply wrong." They assert that because the report "fail[s] to account for the facts in the records it relies upon," it also fails to "give fair notice of criticisms." They conclude that these factual errors "depriv[e] the Report of any basis for opinions about th[ese] issue[s]."

In determining whether the expert report represents an objective good faith effort to comply with the statutory requirements, the court's inquiry is limited to the four corners of the report. *Fortner v. Hosp. of the Sw., LLP*, 399 S.W.3d 373, 379 (Tex. App.—Dallas 2013, no pet.); *see also Jelinek*, 328 S.W.3d at 539 (to determine whether expert report complies with section 74.351, courts consider the information "found within the four corners of the expert report, which need not marshal all the plaintiff's proof but must include the expert's opinion on each of the three main elements: standard of care, breach, and causation") (internal quotation omitted). Statements in an expert report that are "in tension with" other statements may not preclude a trial court from finding the report sufficient. *See Van Ness*, 461 S.W.3d at 144 (expert's conflicting statements did not render report insufficient where report also set out opinion explaining how and why timely treatment would have prevented child's death). "[T]he trial court had discretion—indeed it was incumbent on the trial court—to review the report, sort out its contents, resolve any inconsistencies in it, and decide whether the report demonstrated a good faith effort to show that the [plaintiffs'] claims had merit." *Id.*

As appellants argue, Dr. Link and Dr. Acharya have differing opinions on "whether Dr. Acharya exercised care" in his treatment of Gomez. As required at this stage, however, Dr. Link has explained his opinions and the basis for them. *See Jelinek*, 328 S.W.3d at 539. He has opined that Dr. Acharya failed to meet the standard of care by failing to remove the adrenal gland containing the tumor, misidentifying the tail of the pancreas and "stapling across" it, and failing to be "oriented to the anatomy of the procedure," among other problems. The report informs Dr. Acharya of the specific conduct Gomez has called into question, and provides a basis for the trial court to conclude the claims have merit. *See Palacios*, 46 S.W.3d at 878–79. The existence of factual disputes does not preclude Dr. Link's report from meeting Chapter 74's requirements. *See* CIV. PRAC. & REM. § 74.351(r)(6) ("expert report" must provide "fair summary" of expert's opinions on standards of care, manner in which care rendered failed to meet standards, and causation). We decide appellants' second and third issues against them.

## C.      Standard of care

In their fourth issue, appellants argue that Dr. Link's report "failed to specify a clear standard of care for the surgery other than dressed up versions of 'do no harm.'" They assert that "stating the unfortunate result is not stating the breach of the standard." Gomez disagrees, citing Dr. Link's opinions that the standard of care required Dr. Acharya (1) to notice and realize that he removed the wrong organ during surgery, and (2) to consult specialists during the operation as soon as he became aware of the problem. Dr. Link discusses what Dr. Acharya should have noticed during the surgery that would have led him to discover that he had removed the wrong tissue. Dr. Link also states:

> The standard of care in treating an adrenal malignancy with adrenalectomy is absolutely clear: the adrenal gland containing the tumor should be removed. The standard of care during an adrenalectomy requires that that the surgeon be oriented to the anatomy of the procedure. The standard of care requires that the surgeon identify the correct organ for removal and identify and preserve adjacent organs that are not the targets of this procedure.

–8–

Dr. Link also explains that the standard of care required Dr. Acharya to "articulate a clear and cogent plan for further management of Ms. Gomez's malignant tumor" after the failed surgery. In paragraph 25 of his report, Dr. Link lists additional failures by Dr. Acharya to meet the "standard of minimum care and treatment required of a prudent urologist under like circumstances and similar surroundings." We conclude that Dr. Link provided more detail than "do no harm" as the applicable standard of care, and that Dr. Link's report informed appellants of the specific conduct that Gomez has called into question. *See Palacios*, 46 S.W.3d at 879. We decide appellants' fourth issue against them.

### D.    Causation

In their fifth issue, appellants argue that Dr. Link's report does not meet Chapter 74's requirement to "explain the causal connection between the alleged breaches in the standard of care and the injuries in question in a nonconclusory manner." They contend that Dr. Link's report fails to describe any injury or harm "at all, beyond the injury to the pancreas," does not explain the significance of the injury to the pancreas, and "fails to give any connection at all between the alleged breaches and alleged consequences."[2]

To establish a causal relationship between the injury and the defendant's negligent act or omission, the expert report must show the defendant's conduct was a substantial factor in bringing about the harm, and, absent this act or omission, the harm would not have occurred. *Mitchell v. Satyu, M.D.*, No. 05–14–00479–CV, 2015 WL 3765771, at *4 (Tex. App.—Dallas June 17, 2015, no pet.) (mem. op.). Causation is generally established through evidence of a "reasonable medical probability" that the injury was caused by the negligence of the defendant, meaning that it is more likely than not that the ultimate harm or condition resulted from such negligence. *See id.* "An

---

[2] The parties also dispute whether the doctrine of res ipsa loquitur, a rule of evidence by which a jury may infer negligence, applies here. *See Haddock v. Arnspiger*, 793 S.W.2d 948, 951–55 (Tex. 1990) (discussing application of res ipsa loquitur doctrine in medical malpractice cases). Because we conclude that Dr. Link's report adequately addresses causation, we pretermit discussion of these arguments.

expert may show causation by explaining a chain of events that begins with a defendant doctor's negligence and ends in injury to the plaintiff." *Id.*; *see also McKellar v. Cervantes*, 367 S.W.3d 478, 485–86 (Tex. App.—Texarkana 2012, no pet.). The report must explain "to a reasonable degree, how and why the breach [of the standard of care] caused the injury based on the facts presented." *Mitchell*, 2015 WL 3765771, at *4 (quoting *Jelinek*, 328 S.W.3d at 539–40); *Quinones v. Pin*, 298 S.W.3d 806, 814 (Tex. App.—Dallas 2009, no pet.) (to satisfy Chapter 74's requirement of a showing of causation, expert report must include fair summary of expert's opinion regarding causal relationship between breach of standard of care and injury, harm, or damages claimed). "We determine whether a causation opinion is sufficient by considering it in the context of the entire report." *Mitchell*, 2015 WL 3765771, at *4 (citing *Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.)); *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 496 (Tex. App.—Dallas 2010, no pet.).

As we have discussed, Dr. Link explained that Dr. Acharya breached the standard of care by failing to remove the adrenal gland containing the tumor, failing to be "oriented to the anatomy" of the adrenalectomy procedure, failing to identify the correct organ for removal, and failure to "identify and preserve adjacent organs that are not the targets of this procedure." Dr. Link explained that a few days after the surgery, Gomez "underwent an ERCP with pancreatic sphincterotomy and pancreatic ductal stent placement" and received an abdominal drain, procedures required as "a direct result of injury to the pancreas by Dr. Acharya." Dr. Link also explained, in some detail, the proper procedure for an adrenalectomy and how Dr. Acharya deviated from the proper procedure. After discussing the procedure, Dr. Link concluded, in part:

> (a) Dr. Acharya did not remove the left adrenal gland and tumor, which was the sole indication for Ms. Gomez's surgery. For an operation with the sole goal of removing the left adrenal gland containing a tumor, it appears that Dr. Acharya did not even identify the correct organ for removal during this case. The pathologist reported that the surgical specimen submitted as the adrenal gland actually represented pancreatic tissue.

(b) Dr. Acharya removed the wrong organ (a portion of the pancreatic tail) and caused a serious pancreatic ductal injury resulting in major postoperative morbidity for Ms. Gomez. Critical and relatively straightforward clues (such as the requirement to staple a "thick vascular pedicle") were ignored during surgery. These clues should have led a reasonable and prudent surgeon to suspect a pancreatic injury, the injury and complications of which would have been lessened by consulting the appropriate surgical specialist (a general or pancreatic surgeon) intraoperatively. Failure to consult the appropriate surgical specialist intraoperatively to address the pancreatic injury was below the standard of care.

Appellants assert, "[b]eyond the initial injury to the pancreas . . . the Report has little to offer," and they argue the report "fails to describe with clarity . . . the injury, harm, or damage[ ] claimed by Plaintiff—apart from the fact of the result of the surgery itself." They do not explain, however, why an injury to Gomez's pancreas would be insufficient for purposes of Chapter 74. *See, e.g., TTHR, L.P. v. Coffman*, 338 S.W.3d 103, 109–111 (Tex. App.—Fort Worth 2011, no pet.) (rejecting limitations on types of injuries to which Chapter 74 applies). Dr. Link describes how Dr. Acharya's removal of "a portion of the pancreatic tail"—"the wrong organ"—"caused a serious pancreatic ductal injury" to Gomez. He explains that "Dr. Acharya's failure to meet the standard of care as described clearly resulted in the pancreatic injury that was the root cause of [Gomez's] subsequent complications from a pancreatic leak." He concludes that,

> In my opinion, Dr. Acharya's failure to remove Ms. Gomez's left adrenal tumor and the resulting pancreatic injury, in reasonable medical probability, resulted in (a) her unnecessarily long, complicated and morbid postoperative course, (b) the requirement for multiple additional unanticipated invasive procedures, and (c) insufficiently addressed her original malignancy resulting in the potential for further oncologic sequelae.

We conclude that Dr. Link's report provides a fair summary of his opinions regarding the causal relationship between the breaches of the standard of care he identifies and the injuries to Gomez that he describes. *See Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 225–26 (Tex. 2018) (per curiam) (expert report sufficient that linked conclusion with underlying facts); *Baty*, 543 S.W.3d at 698; *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 515 (Tex. 2017) (per curiam). In *Abshire*, *Baty*, and *Miller,* expert reports were sufficient to meet Chapter

–11–

74's causation requirements where they explained the applicable standard of care, described how the health care provider breached that standard, and explained how that breach caused the plaintiff's injury. *See Abshire*, 563 S.W.3d at 225–26; *Baty*, 543 S.W.3d at 698; *Miller*, 536 S.W.3d at 515. Here, Dr. Link "'make[s] a good faith effort to explain, factually, how proximate cause is going to be proven'" by describing how and why Dr. Acharya's breaches of the standard of care caused the injury to Gomez's pancreas. *See Miller*, 536 S.W.3d at 515 (quoting *Zamarripa*, 526 S.W.3d at 460). We conclude that Dr. Link's opinions regarding the injury to Gomez's pancreas "adequately explain[ ] the links in the causal chain." *See Abshire*, 563 S.W.3d at 225. We decide appellants' fifth issue against them.

## CONCLUSION

We affirm the trial court's order denying appellants' motion to dismiss.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

180833F.P05

–12–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

SUJEET ACHARYA, M.D., TEXAS
ONCOLOGY, P.A., AND TEXAS
UROLOGY SPECIALISTS, Appellants

No. 05-18-00833-CV          V.

BERNICE MARIE GOMEZ, Appellee

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-12969.
Opinion delivered by Justice Osborne;
Justices Myers and Nowell, participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellants' motion to dismiss is **AFFIRMED**.

It is **ORDERED** that appellee Bernice Marie Gomez recover her costs of this appeal from appellants Sujeet Acharya, M.D., Texas Oncology P.A., and Texas Urology Specialists.

Judgment entered this 30th day of April, 2019.